MERCHANTS & MANUFACTURERS BANK OF ELLISVILLE *v.* PHILLIP J. TOOMER LUMBER COMPANY.

[76 South. 565, Division A.]

1. SALE. *Passing of title.*

Where there was an unconditional sale of a carload of lumber, the title passed to the buyer, when the lumber was delivered to the railroad for transportation to the consignee buyer.

2. SALE. *Unconditional delivery to consignee. Bill of lading.*

Where a carload of lumber was delivered to a railroad for shipment to the buyer thereof, and the bill of lading for the same named the buyer as consignee, in such case the bill of lading was *prima-facie* evidence of an unconditional delivery to the consignee.

3. Sale. *Passing of title. Delivery to carrier. Intention.*

Where goods are delivered by a vendor to a common carrier consigned to the vendee, the question whether the title thereby passes from the vendor to the vendee depends upon the intention of the vendor, which intention is to be gathered from all the circumstances of the transaction.

4. Carriers. *Transfer of bill of lading. Title.*

An assignment or transfer of the invoice or bill of sale of a carload of lumber by the consignor to a bank, together with the delivery of the bill of lading, vested in the bank whatever title the consignor had to such lumber, this assignment and delivery constituted a symbolical delivery of the carload of lumber.

5. Sale. *Retention of bill of lading and delivery to bank. Effect.*

The retention of a bill of lading covering a carload of lumber by the consignor and the delivery of it, together with an assignment of the invoice of the lumber to a bank, in the absence of any testimony as to an absolute sale of the property to the consignee, shows that the consignor did not intend to part with its title or right of *jus disponendi* over the carload of lumber by the consignment to the consignee of the lumber.

6. Same.

Where the bank upon becoming the purchaser of the carload of lumber, as above stated, inclosed the bill of lading, together with the invoices, to the consignee, expressly stating in its letter to the consignee that the invoice and bill of lading were the property of the bank, and must be returned at once or remitted to them direct, and at the terms at which the lumber was purchased, this notation by the bank was a notification to the consignee of its ownership of the property covered by the bill of lading and invoice, and the bank retained title to the carload of lumber until its terms were accepted and where there was no acceptance of the shipment by the consignee before the seizure of the lumber under an attachment, the banks claimant's issue as against the attaching creditor of the consignee should be sustained.

7. Carriers. *Stoppage in transitu.*

In such case the doctrine of stoppage *in transitu* does not apply where the legal title to the lumber sold was in the bank.

Appeal from the circuit court of Chickasaw county.
Hon. J. L. Bates, Judge.

Suit by the Phillip J. Toomer Lumber Company against the Ganahl Lumber Company, wherein the Merchants & Manufacturing Bank of Ellisville filed a claimant's issue.  From a judgment against the bank, it appeals.

The facts are fully stated in the opinion of the court.

*Watkins & Watkins,* for appellant.

This case turns upon one single proposition of law. There is but one question involved in the whole dispute, and we will therefore confine this argument to that one subject.  Briefly stated, it is this: Does the transfer of a bill of lading, by the consignor or his vendee, to a third party, for value, operate to transfer the title to the goods covered by such an instrument? If this query can be answered in the affirmative, the court will encounter little difficulty in reaching a decision.

1.  The transfer of a bill of lading, covering goods in transit, operates as a transfer of the title to the goods as effectually as if the goods themselves are delivered.

This proposition of law is so fundamental, so well-established by an interminable line of decisions in both state and federal courts, that it will only be necessary to state the law as laid down in the text-books and encyclopedias.

In 4 American & English Encyclopedia of Law, we find the following at page 546: "General rule.  As symbols of the property therein receipted for, bills of lading are, at common law, transferable so as to pass the title to the goods *in transitu,* when such is the intention, as effectually as if the goods themselves were delivered."  *Allen* v. *Williams,* 12 Pick. (Mass.), 297; 6 Cyc., at page 426.

In connection with this statement of the general law, we wish to cite a decision of this court which follows

exactly the proposition laid down in Cyc. "The supreme court, in support of the text, in the case of *Shaw* v. *Bank*, 101 U. S. 557, 25 Law. Ed. 892, says: 'The function of that instrument (bill of lading) is entirely different from that of a bill or a note. It is not a representative of money used for transmission of money or for the payment of debts or for purchases. It does not pass from hand to hand as bank notes or coin. It is a contract true; it is a symbol of the ownership of goods covered by it, representative of those goods. Bills of lading are regarded as so much cotton, grain, iron, or other articles of merchandise. The merchandise is very often sold or pledged by the transfer of the bills which cover it." *Searles Bros.* v. *Grain Co.*, 80 Miss. 688; *Haas & Company* v. *Citizen's Bank*, 39 So. 129.

Under the laws as here shown, appellant was the actual owner of the carload of lumber because of the title and right of possession it acquired as transferee of the bill of lading, for which it paid a fair and reasonable consideration.

Appellee may contend that upon the delivery of this lumber to the carrier by the original consignor, title became vested in the consignee, Ganahl Lumber Company. But this is not true. Where the transferee of a bill of lading has paid a fair consideration to the consignor or transferror, he becomes vested with a special property in the goods covered by the bill of lading which is defeasible only by the act of the consignee in paying for the goods delivered. *American National Bank* v. *Henderson*, 123 Ala. 612; *Cosmos Cotton Co.* v. *First Nat. Bank*, 171 Ala. 392; *Hood* v. *Bank*, 67 So. 721.

How can the defendant be said to have been the owner of this carload of lumber at the time it was seized under attachment, when it had absolutely no control or possession of same, had not received or even

accepted the contract, and could not get the lumber until the original bill of lading was forwarded to it.

We therefore respectfully submit that this case should be reversed and judgment entered here for the appellant for the reason set out above and under the law governing this case.

*Joe H. Ford,* for appellee.

The issues presented by this record and the arguments in the court below and brief of counsel here, are: 1. Did appellant have the right of stoppage *in transitu* at the time the lumber was attached? 2. Did appellant have the right to sue in its own name conceding that at the time it brought the claimant's issue it had the equitable right to the lumber? 3. Was title to the lumber in appellant at the time it brought the claimant's issue in the attachment suit?

If either of the foregoing questions is to be answered in the negative, the case must be affirmed. I shall undertake to discuss these questions in their order and at the same time answer the argument of counsel for appellant in their brief.

1. In the lower courts, appellant rested its case on their right to exercise the doctrine of stoppage *in transitu* and did not contend that at the time the lumber was attached, it had title thereto at all. Did appellant have the right of stoppage *in transitu* at the time the lumber was seized or at the time it brought this claimant's issue? "That right exists in the single case of insolvency." *St. Joze Indiano,* 1 Wheat. (U. S.) 208; 4 L. Ed. 73; 35 Cyc. 494; *Towley* v. *Bigelow,* 12 Pick. 307; 23 Am. Dec. 607; Benjamin on Sales (7 Ed. Bennett's), pp. 907, 908, Am. Note; 35 Cyc. 494, Note 82. *St. Joze Indiano,* 1 Wheat. (U. S.) 208; 5 L. Ed. 73.

2. The bill of lading was marked on its face in large letters: "Not negotiable." It was not indorsed when it came to W. M. Carter Lumber Company nor was it ever indorsed by that company, the consignor, or

consignee. I know that, as a general rule, the ordinary bill of lading does not have to be indorsed in order to transfer the property it represents, where it is attached to a draft on the consignee for the purchase money which is duly indorsed. But I have been unable to find any case where this was held to be the rule where the bill of lading itself was marked and issued "non-negotiable." Such a stipulation and limitation is certainly a part of the contract of carriage and could not well be disregarded.

3. In the first place, then, did appellant ever have the legal title to the property as the holder of the bill of lading? In the second place, if it ever had title, had it parted with such title before it brought this claimant's issue.

"By taking the bill of lading, the name of the consignee, the shipper vests apparent title in him." 6 Cyc. 426. "In *Grove* v. *Brien et al.,* 8 How. 439, this court said: 'The effect of a consignment of goods generally is to vest the property in the consignee' and though it is also there declared that this effect may be controlled by special clauses in the bill of lading, or by evidence *aliunde,* yet the general effect of a bill of lading to raise a presumption of property in goods in him to whom it makes them deliverable, is conceded." *Lawrence* v. *Minturn,* 17 How. (U. S.) 451, 15 L. Ed. 58. To the same effect are *Griffin* v. *Ingledew,* 6 S. & R. (Penn.) 429, 9 Am. Dec. 444; *Wayland* v. *Moseley,* 5 Ala. 430, 39 Am. Dec. 335; 4 A. & E. Ency. of Law, p. 525 (e); 6 Cyc. 433-H; 4 R. C. L. p. 15, par. 18.

3. But waiving all other considerations and conceding, for the sake of argument, all that is said in the brief of counsel for appellant, the end to all argument was made when appellant, on the day before the lumber was seized under the writ of attachment, mailed the bill of lading itself to Ganahl Lumber Company, the consignee named therein. That act of appellant "was the kick of the ass to the dying lion." If it ever had

title, it parted with it then.  It then made no differ-
ence whether the shipment was made in accordance
with a previous contract of purchase or not.  If, as
counsel contend, it ever had the right after the lumber
went forward under this bill of lading, to "change its
destination" in transit it lost it by that act.  Along
with this bill of lading and invoice, was sent, by ap-
pellant, a notification slip in which was given to con-
signee the right to remit for the lumber just whenever
it was convenient, but, if, within ten days at a discount
of two per cent. or, if, within thirty days at a discount
of one per cent.  Benjamin on Sales (7 Ed. Bennett's),
sec. 398b, page 369; 6 Cyc., p. 426.

This case appears to be the ordinary one where the
dodging creditor undertakes, in a round about way, to
escape the payment of its debts by combining and con-
federating with other parties to so complicate matters
that its property may be sent out of the state immun-
ized from the payment of its debts.

In my judgment, there is no escape from an affirm-
ance, and I respectfully ask that the judgment of the
lower court be affirmed with damages and costs.

SYKES, J., delivered the opinion of the court.

The W. M. Carter Lumber Company, of Laurel, Miss.,
received an order for some lumber from the Ganahl
Lumber Company, of St. Louis, Mo., and had their
agent, the Louin Lumber Company, of Louin, Miss.,
consign to the Ganahl Lumber Company a carload of
lumber.  The order for this lumber placed with W. M.
Carter Lumber Company by the Ganahl Lumber Com-
pany, is not set out in the record, and we do not know
what terms or conditions it contained.  The Ganahl
Lumber Company was named as the consignee in the
bill of lading.  The Louin Lumber Company, on the day
of shipment, May 22, 1914, mailed to W. M. Carter
Lumber Company this bill of lading and an invoice, or

bill of sale, of the lumber contained in the car. On
May 23d the W. M. Carter Lumber Company made
out its invoice of the lumber or bill of sale, addressed
to the Ganahl Lumber Company, in which invoice it is
stated that the terms are:

"Cash, less two per cent. off in ten days. No dis-
count on bills less than car lots."

This invoice or bill of sale is indorsed as follows:

"Pay to the order of Merchants' & Manufacturers'
Bank of Ellisville, Miss.

"(Signed)    W. M. CARTER LUMBER Co."

All of these invoices and the bill of lading were at
that time delivered to the appellant bank. On May
25th the Merchants' & Manufacturers' Bank, in a letter
written the consignee, inclosed the bill of lading and
invoice of this lumber, making the following notation
on said letter:

"This invoice and bill of lading is the property of
the M. & M. Bank, and must be returned at once or
remitted to them direct and at terms at which lumber
was purchased.

"Note.—Terms, two per cent. discount will be allowed
only on amounts paid us within ten days from this date;
one per cent. on amount within thirty days."

A corrected invoice of the lumber was also inclosed
in this letter. On the 26th day of May, or the day after
the bank mailed the bill of lading and invoices to the
consignee, this car of lumber, while in transit from
Louin, Miss., to St. Louis, was seized under an attach-
ment at Houston, Miss. by the appellee Philip J. Toomer
Lumber Company, a creditor of the consignee, Ganahl
Lumber Company. The bank filed a claimant's issue.
Judgment by default was taken against the Ganahl
Lumber Company, and the claimant's issue was decided
adversely to the appellant bank in the justice of the
peace court. An appeal from that judgment was prose-
cuted to the circuit court, where the case was tried by

the judge, acting as both judge and jury, when again a judgment was rendered against claimant, the appellant bank, from which judgment this appeal is prosecuted.

The sole question presented to us for decision is whether or not the title to this carload of lumber was in the appellant bank at the time the attachment was sued out and its claim made. The controversy here is between a creditor of the consignee and the bank. No rights of innocent *bona-fide* purchasers for value are involved. It is well settled that, if there was an unconditional sale of the property by the W. M. Carter Lumber Company to the Ganahl Lumber Company, the title passed to the Ganahl Lumber Company in this case upon the delivery of the car for transportation to the consignee at Louin, Miss. It seems to be the law that the bill of lading in this case is *prima facie* evidence of an unconditional delivery to the consignee.

The intention of the consignor as to whether or not he meant the title to pass to the consignee upon delivery to the carrier is the real question in controversy. "Where goods are delivered by a vendor to a common carrier, consigned to the vendee, the question whether the title thereby passes from the vendor to the vendee depends upon the intention of the vendor, which intention is to be gathered from all the circumstances of the transaction." *Emery Sons* v. *Bank,* 25 Ohio St. 360, 18 Am. Rep. 299. See, also, for a discussion of this question, Mechem on Sales, vol. 1, secs. 788, 789 and 790.

The assignment or transfer of the invoice or bill of sale by the W. M. Carter Lumber Company to the appellant bank, together with the delivery of the bill of lading, vested in the bank whatever title the Carter Lumber Company had to said lumber. *Bank* v. *Jones,* 4 N. Y. 497, 55 Am. Dec. 290; *Emery Sons* v. *Bank,* 25 Ohio St. 360, 18 Am. Rep. 299; *American National Bank* v. *Henderson,* 123 Ala. 612, 26 So. 498, 82 Am. St. Rep. 147; *Bonner* v. *Marsh,* 10 Smedes & M. 376, 48 Am. Dec. 754. This assignment and delivery constituted a symbolical delivery of the carload of lumber. The reten-

tion of the bill of lading by the W. M. Carter Lumber Company and the delivery of it, together with an assignment of the invoice of the lumber, to the bank, in the absence of any testimony as to an absolute sale of the property to the consignee, shows that the W. M. Carter Lumber Company did not intend to part with its title or its right of *jus disponendi* over this carload of lumber by the consignment to the Ganahl Lumber Company.

The bank, upon becoming the purchaser of the same, as above stated, inclosed the bill of lading, together with the invoices, to the consignee, expressly stating in its letter to the consignee that the invoices and bill of lading were the property of the bank, and must be returned at once or remitted to them direct, and at the terms at which the lumber was purchased. The testimony, uncontradicted, for appellant, was that this notation by the bank was a notification to the customer of their ownership of the property covered by the bill of lading and invoice. We construe this to mean that the bank retained title to the carload of lumber until its terms were accepted. There was no acceptance of the shipment by the consignee before the seizure under the attachment. Before the title to the lumber could have passed to the consignee in this case, an acceptance of the terms as shown in the letter and invoices of the bank was necessary. The authorities above cited are in point upon this proposition. The entire record shows that the consignor never intended to part with the *jus disponendi* of this car, or the title to the same, by the mere consignment to the consignee. Since the bank was the owner of the car of lumber, and had the legal title thereto, its claimant's issue should have been sustained.

The doctrine of stoppage *in transitu,* as invoked by appellee, is not applicable, because the legal title to the lumber was in the appellant. Judgment should have been entered in favor of the appellant bank.

Reversed, and judgment here for appellant.

*Reversed.*